UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ISAAC PASCHALIDIS,

                          Plaintiff,

            v.

THE AIRLINE RESTAURANT CORP., JAMES
MESKOURIS, PETER GEORGE MESKOURIS,
and JOHN DOES #1–10,

                          Defendants.

**MEMORANDUM AND ORDER**

20-CV-02804 (LDH)(RLM)

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Isaac Paschalidis brings the instant action against Defendants The Airline Restaurant Corporation, James Meskouris ("James"), Peter George Meskouris ("Peter"), and John Does #1-10, alleging claims for (1) unpaid minimum wages under the Fair Labor Standards Act of 1938 ("FLSA"); (2) unpaid wages under the New York Labor Law ("NYLL"); (3) age discrimination under the New York State Human Rights Law ("NYSHRL"); (4) age discrimination under the New York City Human Rights Law ("NYCHRL"); (5) retaliation under the NYLL; and (6) violation of NYLL wage notice requirements.[1]  (Compl. ¶¶ 1–2.)  Defendants James, Peter, and The Airline Restaurant Corporation move, pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's complaint in its entirety.

---

[1] Plaintiff also alleged a FLSA retaliation claim (Count Five) but has since voluntarily dismissed that claim with prejudice pursuant to Rule 41(a)(1)(A)(i).  (*See* Transcript of July 20, 2020 Pre-Motion Conference at 14:16–15:13 (on file with Chambers).)

## BACKGROUND[2]

Defendants own and operate the Airline Diner in East Elmhurst, Queens.  (Compl. ¶¶ 10–12.)  Plaintiff, a 63-year-old male, is a former employee of Defendants.  (*Id.* ¶¶ 8–9.)  In addition to owning and operating the Airline Diner, Defendants serve as officers, directors, managers, principals, or agents of the Airline Diner.  (*Id.* ¶ 11.)  Plaintiff has been a minority shareholder, officer, and treasurer of the Airline Diner since 1989.  (*Id.* ¶ 12.)  During all relevant times, Plaintiff owned 25 percent of the Airline Diner's outstanding stock.  (*Id.* ¶ 12.)  Defendants James and Peter (the "Meskouris Defendants") together own 75 percent of the Airline Diner's outstanding stock and are officers and directors of the Airline Diner.  (*Id.* ¶ 13.)  From 1989 through his termination in February 2020, Plaintiff worked at the Airline Diner, primarily as a general manager.  (*Id.* ¶¶ 20, 23.)  In this role, Plaintiff was responsible for, among other things, managing the diner, overseeing and managing its staff, operating the cash register, seating guests, cleaning tables, taking phone orders for delivery or pick up, and taking orders and serving seated customers.  (*Id.* ¶ 20.)  For the six years prior to initiating the instant action, Plaintiff worked between 46 and 60 hours a week and his agreed-upon salary was $2,300 per week.  (*Id.* ¶¶ 21, 24.)

Starting in January 2018, the Meskouris Defendants began to "shut" Plaintiff out of the business.  (*Id.* ¶ 25.)  In January 2018, the Meskouris Defendants informed Airline Diner employees that Plaintiff has "no authority" and directed them "not to listen to him."  (*Id.*)  The Meskouris Defendants denied Plaintiff access to payroll records, register printouts, guest checks, employee schedules, and the list of employees.  (*Id.* ¶¶ 25–26, 28.)  The Meskouris Defendants

---

[2]  The following facts taken from the complaint are assumed to be true for the purpose of this memorandum and order.  Although Defendants urge the Court to take judicial notice of the fact that Plaintiff filed a state court complaint, the Court declines to do so here.  (*See* Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") 8, n.5, ECF No. 25.)

also prevented Plaintiff from reviewing or performing payday payouts and refused to meet with Plaintiff or notify him of Airline Diner meetings.  (*Id.* ¶¶ 25–28.)  According to the complaint, the Meskouris Defendants began misappropriating corporate assets and lied to Plaintiff about the diner's revenue.  (*Id.* ¶ 28.)  And, for a period of over six months, commencing in January 2018, the Meskouris Defendants failed to pay Plaintiff a weekly wage.  (*Id.* ¶ 29.)  Then in August 2018, Defendants paid Plaintiff $500 per week for several weeks and $1,000 per week thereafter. (*Id.* ¶ 32.)

Throughout 2019, Plaintiff was further excluded from management of the Airline Diner. In January 2019, Defendant Peter claimed to be "running things now."  (*Id.* ¶ 42.)  In September 2019, the Meskouris Defendants removed Plaintiff as a signatory to the operating account.  (*Id.* ¶ 44.)  When Plaintiff asked about his removal from the account and his restricted access to corporate records and cash register printouts, Defendant Peter told him, "I can do whatever I want and you can't do anything about it."  (*Id.* ¶ 45.)  Two weeks later, the Meskouris Defendants terminated the night shift manager who worked alongside Plaintiff.  (*Id.* ¶ 47.) According to the complaint, Defendant Peter told Plaintiff that he had fired the night shift manager to "make [Plaintiff] [his] slave" because Plaintiff was "too old to handle working without a manager" and "now [Plaintiff] will have to close the store by [himself] and . . . suffer because [he is] too old."  (*Id.* ¶¶ 48, 51.)  In December 2019, Plaintiff questioned Defendant Peter about Plaintiff's reduced wages, the lack of profit distributions, and the removal of Plaintiff's access to corporate records and payroll.  (*Id.* ¶ 49.)  Defendant Peter responded that he wanted Plaintiff out of the business.  (*Id.*)  Defendant Peter asked why Plaintiff did not just retire and called him an "old man."  (*Id.* ¶¶ 46, 54.)

On December 26, 2019, Plaintiff demanded an accounting and inspection of the Airline Diner's books and records.  (*Id.* ¶¶ 56–57.)  The Meskouris Defendants refused the demands and removed Plaintiff's online viewing access to the diner's operating account balance.  (*Id.* ¶¶ 58–59.)  On February 6, 2020, Defendants terminated Plaintiff's employment.  (*Id.* ¶ 60.)  From January 22, 2020, through February 7, 2020, Defendants did not pay Plaintiff for his work at the diner.  (*Id.* ¶ 62.)  Defendants have not provided Plaintiff with required wage notices and statements.  (*Id.* ¶¶ 39–41.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.  *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true."  *Id*. (citations omitted).

## DISCUSSION

### I.   The Business Owner Exemption

"Congress enacted the Fair Labor Standards Act . . . in order to correct 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers.'" *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018) (quoting 29 U.S.C. § 202(a)). "To that end, the FLSA imposes substantive wage, hour, and overtime standards, including requirements for the payment of a minimum wage and for time-and-a-half overtime pay for hours worked in excess of 40 hours during a week." *Id* (citing 29 U.S.C. §§ 206(a), 207(a)(1)). Certain categories of employees, however, are exempt from the FLSA's minimum wage and overtime pay requirements. *See* 29 U.S.C. § 213. These include employees who work in an "executive" capacity, including certain "business owners." 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.101. Of particular relevance here, the "business owner" exemption applies to "any employee who owns at least a bona fide 20-percent equity interest in the enterprise in which the employee is employed . . . and who is actively engaged in its management." 29 C.F.R. § 541.101.

"A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim." *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91, n.7 (2d Cir. 2013) (citations omitted). As such, "[a] plaintiff is not required to plead the absence of such a defense." *Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 81–82 (2d Cir. 2015) (citing *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996)). Instead, only where the defense is irrefutable on the face of the complaint is dismissal on the pleadings appropriate. *Id.* The bar is high. Nonetheless, Defendants argue that Plaintiff's minimum wage claim must be dismissed, because as a business owner, Plaintiff was exempt from the FLSA's minimum wage protections. (Defs.' Mem. at 8–12.)

There can be no question that Plaintiff has pleaded that he is an employee with a bona fide 20 percent equity interest in the Airline Diner. Indeed, Plaintiff pleaded that his interest stood at 25 percent. (Compl. ¶ 12.) Dismissal is warranted, therefore, only if it is also evident

from the face of Plaintiff's complaint that he was actively engaged in the management of the Airline Diner.

Pursuant to the regulations defining the exemption for executive employees, "Management" is defined to include:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

In an effort to persuade the Court that Plaintiff served in a management capacity, thereby triggering the business owner exemption, Defendants direct the court to Plaintiff's allegation that he was "primarily employed" as a general manager overseeing and managing the diner and its staff.  (Defs.' Mem. at 3, 10.)  This is true, according to the complaint, until January 2018.  Then, however Plaintiff's responsibilities changed meaningfully.  In particular, Plaintiff alleges that beginning in January 2018, the Meskouris Defendants (i) "inform[ed] the Airline Diner employees that [Plaintiff] has 'no authority' and 'not to listen to [Plaintiff] but only the shift manager' or Individual Defendants" and (ii) "prevented [Plaintiff] from having access to payroll records, reviewing or performing payday payouts to employees or having access to the schedule or list of employees."  (Compl. ¶¶ 25–26.)  According to Defendants, such allegations do not allow for the conclusion that Plaintiff's responsibilities changed.  Such a position strains credulity.  How, the Court wonders, might Plaintiff have continued to "oversee" the diner and the

6

staff if he had "no authority"?   Plaintiff has sufficiently pleaded that he ceased serving as management as of January 2018.

That, as Defendants note, Plaintiff maintained the title of "general manager" through February 2020, does not alter the Court's conclusion.  (*See* Defs.' Mem. at 3.)  Whether an employee is subject to a FLSA exemption "is not determined by job title alone."  *Coleman-Edwards v. Simpson*, 330 F. App'x 218, 219 (2d Cir. 2009) (citations omitted).  Rather, this "question[] should be resolved by examining [an employee's] actual job characteristics and duties."  *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010).  Here not only are Plaintiff's responsibilities alleged to have changed in 2018, so too did his salary.  As alleged, Plaintiff was not compensated at all for over six months beginning in January 2018 and thereafter was paid an amount significantly lower than the $2,300 weekly salary paid to Plaintiff from 2014 until 2018. (Compl. ¶¶ 24, 27–29, 31–33.)  Defendants argue that the alleged firing of the night shift manager is evidence that Plaintiff assumed that role.  (Defs.' Mem. at 5, 12, 17.)  Defendants' argument proves too much.  Indeed, the allegations belie such a conclusion.  According to the complaint, upon the firing of the night manager, Defendant Peter told Plaintiff that Plaintiff would now suffer because Plaintiff was "too old to handle working without a manager." (Compl. ¶ 51.)  The only reasonable inference to be drawn from that allegation is that from that point forward, the diner operated without a night shift manager.

Simply put, Defendants have not convinced the Court that that the business owner exemption "irrefutably applies."  *In Kyu Kim v. Korean News of Chicago*, No. 17 C 1300, 2017 WL 3034671, at *2 (N.D. Ill. July 18, 2017), *as corrected* (July 19, 2017) (denying motion to dismiss based on the business owner exemption where plaintiff's allegations did not amount to admissions that the exemption irrefutably applied).

## II.    Plaintiff's "Employer" Status Under the FLSA

It is well-settled that an employer may be liable to an employee for unpaid minimum wages under the FLSA.  29 U.S.C. § 216(b) ("Any employer who violates the [FLSA minimum wage provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages."); *see also Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999) (affirming district court's conclusion that defendant was an employer and therefore liable to employees for FLSA minimum wage violations).  To determine whether an individual or entity is an employer and therefore liable under the FLSA, courts apply the "economic realities" test set forth in *Carter v. Dutchess Community College.*  735 F.2d 8, 12 (2d Cir. 1984).  Under this test, courts consider, *inter alia*, "whether the alleged employer could hire and fire the worker, control work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records."  *Id.* at 14; *see also Herman*, 172 F.3d at 139 (stating that "to be held liable under the FLSA, a person must be an employer" and applying *Carter* factors to determine employer-employee relationship between defendant and the workers in question).  Relying on *Carter* and its progeny, Defendants argue that Plaintiff's FLSA minimum wage claim must be dismissed.  (Defs.' Mem. at 16–18.)  As Defendants' argument goes, Plaintiff was an employer under the test set forth in these cases and therefore cannot be considered an employee under the FLSA wage provisions.  (*Id.*)  Notably, Defendants fail to cite a single case where dismissal was granted on this basis.  This is not surprising as Defendants' argument reveals a misapprehension of the law.  The *Carter* inquiry focuses on the relationship between a defendant and his alleged employees to determine whether the defendant may be held liable as an employer under the FLSA.  Here, Plaintiff's liability under the FLSA is not at issue, and as such, the application of the *Carter* test to determine Plaintiff's employer status is inapposite.  Defendants' argument fails.

### III.     Plaintiff's FLSA Minimum Wage Claim

The FLSA provides that "[e]very employer shall pay to each of [its] employees" not less than an hourly minimum wage as set by statute.  29 U.S.C. § 206(a).  During the relevant period, the federal hourly minimum wage was $7.25.  29 U.S.C. § 206(a)(1)(C).  A plaintiff's average hourly rate of pay is determined "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) (quoting *Johnson v. Equinox Holdings, Inc.*, 13-cv-6313, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014)).  To state a minimum wage claim, "it is sufficient for a plaintiff to allege facts about [his] salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period."  *Serrano v. I. Hardware Distributors, Inc.*, No. 14-CV-2488 PAC, 2015 WL 4528170, at *3 (S.D.N.Y. July 27, 2015) (quoting *Tackie v. Keff Enters. LLC*, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014)).  Put another way, a plaintiff must plead facts about when, and for how many hours, he worked for less than a minimum wage, such that the complaint indicates the applicable rate of pay and the amount of unpaid minimum wages due.  *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) ("[A] claim under the FLSA to recover unpaid minimum . . . wages should indicate the applicable rate of pay and the amount of unpaid minimum . . . wages due.").[3]

---

[3]  In challenging the sufficiency of Plaintiff's pleadings, Defendants rely largely on a trilogy of cases in which the Second Circuit addressed the level of specificity needed to state a claim for overtime violations.  (Defs.' Mem. 12–13.)  As Plaintiff does not allege overtime violations, these cases are unhelpful.  *See, e.g.*, *Marin v. Apple–Metro, Inc.*, No. 12–CV–5274, 2014 WL 7271591, at *3 (E.D.N.Y. Dec. 18, 2014) (distinguishing *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106 (2d Cir.2013), as arising in the context of overtime claims whereas plaintiff's claim was for unpaid minimum wages).

Defendants argue that Plaintiff fails to allege sufficient details to plead a minimum wage violation.[4]  The Court agrees.

Plaintiff's claim lacks the requisite specificity.  Plaintiff does not identify the hours he actually worked in any single week.  Rather, Plaintiff alleges that he worked between 46 and 60 hours per week at the Airline Diner in the last six years and between 60 and 80 hours per week before that.  (*Id.* ¶¶ 21.)  And, Plaintiff fails to identify the specific weeks during which he was paid the complained-of weekly rates.  Plaintiff alleges that starting sometime in January 2018, he was not paid his weekly wage or profit distributions for "over six months," that he was paid $500 per week for several weeks starting sometime in August 2018, and that he was paid $1,000 per week thereafter.  (Compl. ¶¶ 29, 32.)  Even where Plaintiff identifies a specific time period— Wednesday, January 22, 2020, through Thursday, February 6, 2020—he fails to allege the number of hours actually worked during that period, merely stating that he worked "his standard hours as general manager."  (*Id.* ¶¶ 60, 62.)  This conclusory allegation is not enough.  *See Lopez-Serrano*, 132 F. Supp. 3d at 402 (finding plaintiff's allegations to be conclusory and insufficient to state a claim under the FLSA where plaintiff alleged that her specifically-pleaded hours for one week were typical of all other weeks during her one-year employment).  Here, Plaintiff has not identified the number of hours he actually worked during any specific period.

---

[4] Defendants rely heavily on what they construe as inconsistencies between the complaint and a December 2019 Letter Plaintiff's counsel sent to Defendants.  (Defs.' Mem. at 14.)  When ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Here, although the December 2019 Letter is integral to the complaint, the Court does not find the letter to be materially inconsistent with Plaintiff's allegations concerning Plaintiff's 2018 compensation.  Accordingly, consideration of the December 2019 Letter does not alter the Court's analysis.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (district court's reference to letter attached to defendant's motion to dismiss was not erroneous where court did not rely on letter as a basis for its decision, but simply referred to it for background).

Plaintiff's failure to provide that necessary information is fatal to his pleadings.  *See Gisomme v. HealthEx Corp.*, No. CV 13-2541 LDW WDW, 2014 WL 2041824, at *3 (E.D.N.Y. May 15, 2014) (dismissing FLSA minimum wage claims where plaintiffs' allegations were insufficient to establish when or for how many hours plaintiffs allegedly worked but were not paid minimum wages).

Accordingly, Plaintiff's minimum wage claim under the FLSA is dismissed for failure to state a claim.  Although Plaintiff's FLSA minimum wage claim, as it currently stands, is not sufficiently pleaded, Plaintiff's allegations are imminently remediable on amendment. Accordingly, the Court will permit Plaintiff to amend his pleadings.

**IV.    Supplemental Jurisdiction over Plaintiff's State Law Claims**

Having dismissed Plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) ("We have said that if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008))); *see also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court[.]" (internal quotation marks and citations omitted)).  These claims are therefore dismissed without prejudice for lack of subject matter jurisdiction.

11

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's complaint is DISMISSED without prejudice, with leave to amend.  Plaintiff shall file an amended complaint, if any, within 30 days of this memorandum and order.

SO ORDERED.

Dated: Brooklyn, New York  
  October 28, 2021

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge