UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ISAAC PASCHALIDIS

                        Plaintiffs,

v.

THE AIRLINE RESTAURANT CORP., JAMES MESKOURIS, PETER GEORGE MESKOURIS, and John Does #1-10,

                        Defendants.

**MEMORANDUM AND ORDER**
20-CV-2804 (LDH) (LB)

---

LaSHANN DeARCY HALL, United States District Judge:

Isaac Paschalidis ("Plaintiff") brings the instant action against The Airline Restaurant Corp. ("Airline" or the "Restaurant"), James Meskouris ("James"), and Peter George Meskouris (Peter"), for violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").  The parties cross-move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all of Plaintiff's claims.

**UNDISPUTED FACTS[1]**

Airline is a family diner owned and operated in Queens, New York since 1989.  (Rule 56.1 Statement of Material Facts ("56.1") ¶ 1, ECF No. 84–1.)  At Airline's inception in 1989, there were four owners – Plaintiff, his cousin, Defendant James, James's father, and James's brother – each of whom owned a 25 percent equity interest in Airline.  (*Id.* ¶ 2.)  Subsequently, at some point prior to 2017, Defendant James and his brother inherited equal portions of their

---

[1] The foregoing facts are undisputed unless otherwise noted.  Facts that were not contradicted by citations to admissible evidence are deemed admitted.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

1

father's 25 percent interest. (*Id.* ¶ 3.) In 2017, Defendant James purchased his brother's interest in Airline. (*Id.* ¶ 3.) Thus, Defendant James owned a 75 percent interest in Airline and Plaintiff retained a 25 percent interest. (*Id.* ¶ 4.) In approximately mid-2018, upon Defendant James's retirement, his son, Defendant Peter, inherited James's interest in Airline, becoming a 75 percent equity owner. (*Id.* ¶ 6.) Defendant James has not been actively involved with Airline since his retirement. (*Id.* ¶ 8.)

When Airline opened, Plaintiff was responsible for overseeing employees, collecting money, and ensuring that Airline continued to make money. (*Id.* ¶ 10.) Plaintiff's duties did not formally change when Defendant Peter became a co-owner in mid-2018. (*Id.* ¶ 11.) Between January 2018 and February 6, 2020, Plaintiff was responsible for, among other things, coordinating inventory with suppliers, and ensuring proper totals in the cash register and that customer received satisfactory service. (Defs.' 56.1 ¶ 12.) That said, the parties dispute whether Plaintiff was able to carry out his managerial duties after Defendant Peter became a co-owner. (*Id.* ¶¶ 11–12; Pl.'s Reply 56.1 ¶¶ 11–12.) Plaintiff maintains that in or around 2018 and 2019 employees stopped following his directions and told Plaintiff that they were directed by Defendant Peter not to listen to him. (Pl.'s 56.1 ¶ 76). Defendants dispute this. (Defs.' Reply ¶ 76.) Once Defendant Peter became part owner, he was responsible for improving the business, renovating, and reorganizing the restaurant. (*Id.* ¶ 7.) The parties dispute whether Defendant Peter referred to himself as the "head boss." (Pl.'s 56.1 ¶ 83; Pl.'s Reply 56.1 ¶¶ 19, 60.)

The parties agree that Airline began losing money after Defendant Peter became co-owner. (Defs.' 56.1 ¶ 29.) Plaintiff, as an owner, was asked to contribute funds to support Airline's business, but the parties dispute whether Plaintiff and Defendant Peter discussed Airline's financial issues. (Defs.' 56.1 ¶¶ 17–18; Pl.'s Reply ¶¶ 17–18.) The parties also dispute

2

whether Plaintiff ever managed Airline's payroll or other finances. (Defs.' 56.1 ¶ 15; Pl.'s Reply ¶ 15.) Although Plaintiff had authority to recommend to Defendant Peter pay rate adjustments for employees, Plaintiff was not involved in decisions regarding any such adjustments. (Defs.' 56.1 ¶ 19; Pl.'s Reply ¶ 19.) And although there were no new Airline employees between 2018 and 2020, the parties agree that Plaintiff would have been responsible for helping to interview new employees. (Defs.' 56.1 ¶ 21; Pl.'s Reply ¶ 21.) None of Airline's owners, including Plaintiff, were responsible for creating employees' schedules. (Defs.' 56.1 ¶ 22.) Instead, Airline's managers were responsible for recording employees' hours. (*Id.*) However, managers did not record the hours of any owners, including Plaintiff. (*Id.*)

At Airline's inception, the owners, including Plaintiff, agreed that each would receive the same salary as compensation for working similar hours. (*Id.* ¶ 30.) In 2017, when Plaintiff owned a 25 percent equity interest and Defendant James owned a 75 percent equity interest, they each received the same salary per week. (*Id.* ¶ 33.) In December 2017, the pay for both Plaintiff and Defendant James was reduced from $1,890.00 to $1,000.00. (*Id.* ¶ 34.) In January 2018, Plaintiff complained to Defendant James about the pay reduction, maintaining that it was inconsistent with the hours he had worked. (*Id.* ¶ 36; Pl.'s Reply ¶ 36; Ex. 3 (Pl.'s Dep. Tr.) at 53:20-56:6.) Upon his retirement in mid-2018, Defendant James ceased receiving any compensation from Airline. (*Id.* ¶ 38.) Defendant Peter began receiving compensation as an owner of Airline on July 27, 2018, and he and Plaintiff each received salaries of $1,000.00. (*Id.* ¶ 38.) In January 2019, Plaintiff continued to complain about his compensation, including because he received the same salary as Defendant Peter and Defendant Peter's brother, although Plaintiff believed that he had worked more hours. (*Id.* ¶ 42; Pl.'s Reply ¶ 42.) Plaintiff also complained because he did not receive compensation for some pay periods at all. (Defs.' 56.1 ¶

3

42; Pl.'s Reply ¶ 42.) Payroll records indicate that Plaintiff received no compensation for the following weekly pay periods: December 29, 2017; January 5, 2018; March 9, 2018; June 2018; July 6, 2018; August 10, 2018; November 9, 2018 thru December 7, 2018; December 28, 2018; January 2019 thru March 2019; and January 31, 2020 thru February 6, 2020. (Pl.'s Reply ¶ 35; Ex. 7; Ex. 10.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### I. The Business Owner Exemption

Congress enacted the Fair Labor Standards Act . . . to address "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018) (quoting 29 U.S.C. § 202(a)). To that end, the FLSA imposes substantive wage, hour, and overtime standards, including requirements for the payment of a minimum wage and for time-and-a-half overtime pay for hours worked in excess of 40 hours during a week. *Id.* (citing 29 U.S.C. §§ 206(a), 207(a)(1)). Certain categories of employees, however, are exempt from the FLSA's minimum wage and overtime pay requirements. *See* 29 U.S.C. § 213. These include employees who work in an "executive" capacity, including certain "business owners." 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.101. Of particular relevance here, the "business owner" exemption applies to "any employee who owns at least a bona fide 20-percent equity interest in the enterprise in which the employee is employed . . . and who is actively engaged in its management." 29 C.F.R. § 541.101. Defendants argue that they are entitled to summary judgment on all of Plaintiff's FLSA claims because the record establishes that Plaintiff is exempt from FLSA's protections as a "business owner." The Court agrees.

Whether an exemption under FLSA applies "is not determined by job title alone" but by examining an employee's actual job characteristics and duties. *Coleman-Edwards v. Simpson*, 330 F. App'x 218, 219 (2d Cir. 2009) (citing 29 C.F.R. § 541.2). "An employer seeking to rely upon such an exemption as a defense to paying overtime bears the burden of proving that such exemption applies." *Yeh v. Han Dynasty, Inc.*, No. 18 CIV.6018 (PAE), 2020 WL 883501, at *6 (S.D.N.Y. Feb. 24, 2020). In making this determination, the Court must view all facts "in the

5

light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

Here, the parties do not dispute that Plaintiff owns at least the requisite 20 percent equity interest in Airline. Indeed, Plaintiff agrees that he retains a 25 percent equity interest in the Restaurant. (Defs. 56.1 ¶ 9.) However, the parties dispute whether the record establishes that Plaintiff "actively managed" Airline during the relevant period. (*See* Pl.'s Reply 56.1 ¶ 25.) Generally, "management" includes, but is not limited to:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

As Defendants argue, Plaintiff does not contest that his duties, which included "running the Restaurant" by "making sure all the employees were doing their job, collecting the Restaurant's money, and ensuring that the Restaurant [was] successful and making money, did not change after Defendant Peter became a part owner. (Defs.' Mem. at 8, ECF No. 84.; Defs.' 56.1 ¶¶ 10–11.) In fact, Plaintiff concedes that after Defendant Peter became part owner, Plaintiff was responsible for directing employees, coordinating inventory with suppliers, ensuring proper totals in the cash register, and ensuring that customers received satisfactory service. (Pl.'s 56.1 ¶ 12.) Significantly, all of these duties fit squarely within section 541.102's definition of "management." Nevertheless, Plaintiff purports to dispute whether, as a practical

6

matter, his work at Airline fulfilled these managerial duties. (*See* Pl.'s Opp'n at 3–5, ECF No. 85.) Specifically, Plaintiff asserts that Defendant Peter "stripped [him] of any and all managerial authority" by "instruct[ing] the Diner's staff to not listen to Plaintiff." (*See* Pl.'s Reply 56.1 ¶¶ 11–12.) But the evidence that Plaintiff cites does not support such a sweeping rebuttal. Plaintiff cites to his testimony that Airline employees "said that they are not going to listen to [him] because Peter told them not to listen to [him]." (*See* Pl.'s Dep. Tr. at 44:6-44:12, ECF No. 84-5.). When asked for details about the employees' purported refusal to take Plaintiff's directions, Plaintiff describes only two instances – one in which he instructed the grill staff to serve larger portions, (*id.* at 44:13-45:11) and another when he told employees that they were not permitted to serve alcoholic beverages (*id.* at 49:10-50:5). According to Plaintiff, on both occasions, employees expressly stated that Peter gave conflicting instructions and told them either not to defer to Plaintiff or to keep Plaintiff out of the loop. (*Id.* at 45:6-11; 49:15-20.) As Defendants aptly point out, Plaintiff's testimony regarding the employees' purported statements constitute inadmissible hearsay and thus cannot be offered to prove that Peter in fact made those statements. *See generally* Fed. R. Evid. 801; *see also Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) ("Nor would testimony by [the plaintiff] that other firefighters told her of certain statements by [a colleague] likely be admissible to prove that [the colleague] actually made such statements, for her testimony offered for that purpose would be hearsay.") In relying only on inadmissible hearsay, Plaintiff fails to identify any dispute as to whether he directed the work of Airline's employees.

But even if Plaintiff could establish that his authority to direct Airline's employees was compromised, such a finding as to one type of management activity would be insufficient to conclude that Plaintiff was "stripped . . . of *any* and *all* managerial authority." (*Cf.* Pl.'s Reply

7

56.1 ¶ 12) (emphasis added).  To be sure, whether Plaintiff "actively managed" Airline is not limited to whether he directed the Restaurant's employees.  *See* 29 C.F.R. § 541.102.  And, Plaintiff cites to no evidence disputing that he was able to carry out his responsibilities of coordinating inventory, ensuring proper amounts in the cash register, managing customer service, or ensuring the space was clean and clear.  (Def.'s 56.1 ¶ 12; Pl.'s Reply 56.1 ¶ 12.)

As to management responsibilities that Plaintiff argues are in dispute, the record is patently unsupportive.  The Court addresses each in turn.  First, Plaintiff asserts that he was not involved with interviewing or training employees during the relevant period is misleading.  (*See* Pl.'s Opp'n at 4.)  But, the cited portion of Plaintiff's deposition states that although Airline did not hire any new employees during the relevant period, Plaintiff would have been involved in hiring and training any new employees that had been hired.  (Pl.'s Dep. Tr. at 40:12-24.)  Next, Plaintiff maintains that he did not create employee work schedules.  (*See* Pl.'s Opp'n at 4.)  But, as Plaintiff conceded that "[n]one of Airline's owners . . . were responsible for creating the schedule for the Restaurant's employees," (Defs.' 56.1 ¶ 22; Pl.'s Reply ¶ 22), the fact that Plaintiff did not do so does not support his contention that he was stripped of management authority.  Plaintiff also asserts that he was not involved in handling employee complaints or adjusting employee wages.  To the contrary, Plaintiff stated that when employees complained to him about their salaries, he "ha[d] the ability to provide . . . input into what the rate of pay was," although as a co-owner, he "had to talk with Peter about it."  (Pl.'s Dep. Tr. at 46:21-47:7.)  Finally, in asserting that he "had no input into the Diner's budget" and "was not able to implement any legal compliance measures," Plaintiff appears to have selected two of the few, if not only, management activities set forth in section 541.102 that did not align with his work.  (*See* Pl.'s Opp'n at 5.)  However, the Court need not find that Plaintiff fulfilled every duty listed

8

as an example management activity in section 541.102 to conclude that Plaintiff actively managed Airline.  Accordingly, Plaintiff fails to point to any genuine issue of material fact that he actively managed Airline Diner.

As the Court finds that Plaintiff indisputably maintained at least a 20 percent interest in Airline and actively managed the Diner, Plaintiff is exempt from FLSA protections as a business owner.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's FLSA claims is granted.

## II.   State Law Claims

The parties also move for summary judgment as to Plaintiff's NYLL claims.  Because the Court has granted Defendants' motion for summary judgment as to Plaintiff's federal claims, it "decline[s] to exercise supplemental jurisdiction" over Plaintiff's state law claims [because] "it 'has dismissed all claims over which it has original jurisdiction'."  *Kolari v. N.Y. Presbyterian Hosp.*, 455 F. 3d 118, 121–22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.")).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

SO ORDERED.

Dated:  Brooklyn, New York
       October 28, 2024

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge